**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

EMERALD LENGEL, individually
and on behalf of all others
similarly situated.

     Plaintiff,

  v.          Case No. 15-2198-RDR

HOMEADVISOR, INC.,

     Defendant.


**<u>MEMORANDUM AND ORDER</u>**

   Plaintiff made application for employment with defendant.
During this process, plaintiff signed a form which permitted
defendant to procure a consumer report as a kind of background
check.  Plaintiff now brings this action alleging that defendant
violated a provision of the Fair Credit Reporting Act (FCRA)
which governs disclosures that are required prior to procuring
such a consumer report.  The FCRA provision at issue states in
part that it is illegal to "procure, or cause a consumer report
to be procured, for employment purposes with respect to any
consumer, unless . . . a clear and conspicuous disclosure has
been made in writing to the consumer at any time before the
report is procured or caused to be procured, <u>in a document that
consists solely of the disclosure</u>, that a consumer report may be
obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i)
(emphasis added).  Plaintiff alleges that the disclosure

defendant made to her was not in a document consisting solely of the disclosure, contrary to FCRA requirements.  This case is now before the court upon defendant's motion to dismiss for failure to state a claim pursuant to FED.R.CIV.P. 12(b)(6).

Plaintiff does not allege actual damages.  Defendant's motion to dismiss argues, and it is undisputed by plaintiff, that in order to obtain statutory damages for a violation of the FCRA, plaintiff must allege a knowing or reckless violation of the statute.  The statute requires proof of willful noncompliance to obtain statutory damages.  § 1681n(a).  A willful violation requires proof of knowing or reckless conduct. Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 57 (2007). Defendant asserts that plaintiff has failed to plausibly allege a willful violation of the FCRA.  The court disagrees.  For the reasons which follow, the court finds that plaintiff has alleged a plausible claim that defendant recklessly violated the provisions of § 1681b(b)(2)(A)(i).

I.  MOTION TO DISMISS STANDARDS

In Khalik v. United Air Lines, 671 F.3d 1188, 1190-92 (10th Cir. 2012), the Tenth Circuit reviewed the standards for determining whether a complaint fails to state a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a
> pleading must contain "a short and plain statement of
> the claim showing that the pleader is entitled to
> relief."  Recently the Supreme Court clarified this
> pleading standard in Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009): to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. 1955. A plaintiff must "nudge [his] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. <u>Id.</u>

The Court explained two principles underlying the new standard: (1) when legal conclusions are involved in the complaint "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions," <u>Iqbal</u>, 129 S.Ct. at 1949, and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss," <u>id.</u> at 1950. Thus, mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. 1955. Accordingly, in examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable.

## II. THE COMPLAINT'S FACTUAL ALLEGATIONS

Plaintiff alleges that she submitted an employment application to defendant on November 25, 2013; that she was hired the same day contingent upon a satisfactory background check; and that she began working for defendant on December 2, 2013.

Plaintiff's employment application with defendant is an exhibit to the complaint (Doc. No. 1-2) and, therefore, may be considered as an allegation in the complaint. FED.R.CIV.P. 10(c); <u>Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n</u>, 771 F.3d 1230, 1238 n. 9 (10th Cir. 2014). The exhibit has five

pages and contains two disclosures which plaintiff alleges violate the FCRA. One of the alleged disclosures is in a section labeled "Acknowledgment and Signature" and the other alleged disclosure is on a page labeled "Background Check Authorization: Applicant Information Release Form." The complaint alleges that the employment application included the background check and release form. Doc. No. 1-2 at ¶ 18.

The first three pages of the exhibit ask for "basic information" such as name, address, position applied for, education, prior work history, references and prior convictions (if any). The fourth page contains the "Acknowledgment and Signature" provision. On this page, plaintiff represented with her signature that she had no agreement with a prior employer which would restrict or impair her employment with defendant; that she understood that her employment relationship with defendant would be as an at-will employee; that she understood that policy statements or handbooks or other materials did not constitute a guarantee of employment; that defendant had the right to modify, amend or terminate its policies, practices, programs and benefit plans; and that she understood that defendant would rely upon the accuracy and completeness of her statements. Finally, the acknowledgement section reads:

> I authorize investigation of all statements contained
> in this application and permit HomeAdvisor to obtain
> any transcripts, records or documents pertaining to my

> background and business experience.  I also agree to
> release HomeAdvisor from any liability arising there
> from and understand that any misstatements, omissions
> or false statements made by me may be cause for
> dismissal.

Plaintiff signed and dated this page.

The first four pages of the exhibit have a bold line
border.  The fifth page does not, suggesting that it is a
different document than the first four pages.  But, it is not
clear to the court whether the fifth page was presented to
plaintiff as part of the other pages of the exhibit or whether
it was presented separately.

The fifth and last page of the exhibit is the "Background
Check Authorization:  Applicant Information Release Form."  This
page states as follows:

> I hereby authorize HomeAdvisor and/or their authorized
> agents to gather information regarding the following:
> All records including criminal, credit, driving, drug,
> and/or education; written or verbal from previous
> employers; and any other pertinent information
> relating to the function of my job.
>
> I understand that all inquiries on this form are used
> for identification purposes only in order to conduct a
> background check, and are asked for legitimate
> nondiscriminatory reasons.  Responses to sex, age and
> race inquir[i]es are voluntary, and choosing not to
> respond will not preclude hire.  I hereby release
> HomeAdvisor and any of its authorized agents from
> liability, and understand there is no invasion of
> privacy.
>
> I understand that submission of false information on
> this or any employment forms m[a]y result in non-
> selection or termination if hired.  The following is
> my complete legal name, and all information is true

and correct to the best of my knowledge. This
information is used for verification purposes ONLY:

Below these paragraphs are blank fields where plaintiff filled
in her name, the position she applied for, her race, her sex,
and the cities where she currently and previously lived. This
information duplicated to some extent the information on the
first three pages of the exhibit. Again, this indicates that
the fifth page was a separate document from the first four
pages. There was also a blank field for plaintiff's signature
on the fifth page, which she completed.

III. PLAINTIFF'S LEGAL CLAIMS

Plaintiff contends that defendant violated the FCRA's
requirement that the disclosure of defendant's request to
procure a consumer report be made "in a document that consists
solely of the disclosure." In making this claim, plaintiff
refers to both the "Acknowledgment & Signature" page
("Acknowledgment page") and the "Background Check Authorization:
Applicant Information Release Form" ("Release form").

Defendant's arguments focus upon the Release form.

IV. DEFENDANT'S ARGUMENTS

Defendant contends that plaintiff has not plausibly alleged
a <u>willful</u> violation of § 1681b(b)(2)(A) of the FCRA as required
if plaintiff is to be entitled to statutory damages or punitive
damages. Defendant argues that its analysis comports with the

Supreme Court's decision in <u>Safeco</u>. In <u>Safeco</u>, the Court examined whether a violation of the FCRA constituted a willful violation. The Court determined that "willful" violations include both knowing violations and "reckless" violations of the law. The court held that "reckless" violations are those acts which rely upon an objectively unreasonable reading of the FCRA and which lead to a substantially higher risk of violating the law than the risk associated with a merely careless reading of the statute. 551 U.S. at 69. In <u>Safeco</u>, the Court examined the statutory text, considered the district court's ruling, took into account the presence or absence of guidance from the courts of appeals, and also reviewed whether there was guidance from the FTC, in deciding whether a violation of the FCRA was reckless. <u>Id.</u> at 69-70.

Defendant argues that its interpretation of the FCRA is not objectively unreasonable, first, because the statutory text is unclear. The text in question, § 1681b(b)(2)(A), reads:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless – –
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to

7

in clause (i)) the procurement of the report by that
person.

Defendant contends this statutory language is unclear because
the statute does not define "disclosure" and because the
provisions are internally inconsistent since they allow for a
"disclosure" and an "authorization" to be made on a document
which is supposed to consist "solely of the disclosure."

Defendant asserts that "the statute can be reasonably read
to permit a company to include relevant additional information
alongside the disclosure as [defendant] did here." Doc. No. 12
at p. 10. According to defendant, logically, a proper
"disclosure" and "authorization" form should explain the
consequences of such an authorization which, in defendant's
release form, included a release from liability.

Defendant further notes that there are no appellate court
decisions which have conclusively construed the statutory
language at issue here, and, of course, there were no such
decisions at the time of the actions alleged in the complaint.
Defendant adds that district court decisions are in conflict.

As for FTC guidance, the parties have made reference to the
"Advisory Opinion to Hauxwell," dated June 12, 1998, which was
drafted by the FTC staff. The Hauxwell opinion states in part:

> [I]t is our position that the disclosure notice and
> the authorization may be combined. If they are
> combined, identifying information (such as date of
> birth, Social Security number, driver's license

number, and current and former addresses) may be
included in the form. However, the form should not
contain any extraneous information.

Doc. No. 1-5. The opinion further states that a waiver

provision "in a disclosure form will violate" the FCRA, "which

requires that a disclosure consist 'solely' of the disclosure

that a consumer report may be obtained for employment purposes."

Id. Part of the reasoning offered for this conclusion is that

benefits provided to citizens by federal statutes may not be

waived by private agreement. Id., citing Brooklyn Savings Bank

v. O'Neil, 324 U.S. 697 (1945).

The parties have also made reference to three other FTC

Advisory Opinions. In the "Advisory Opinion to Steer," dated

October 21, 1997, it is written:

> [W]e believe that it was the intent of the drafters to
> assure that the required disclosure appear
> conspicuously in a document unencumbered by any other
> information. The reason for specifying a stand-alone
> disclosure was so that consumers will not be
> distracted by additional information at the time the
> disclosure is given. We believe that including an
> authorization in the same document with the disclosure
> . . . will not distract from the disclosure itself; to
> the contrary, a consumer who is required to authorize
> procurement of the report on the same document will be
> more likely to focus on the disclosure. However, such
> a document should include nothing more than the
> disclosure and the authorization for obtaining a
> consumer report.

Doc. No. 12-2. The FTC staff wrote in "Advisory Opinion to

Coffey" in 1998:

You ask whether a party that has secured an employee's authorization for the report in an employment application must also make the disclosure in a separate document. The answer is yes, because Section 604(b)(2)(A) specifically states that the document containing the required disclosure may not include other items.

You ask what information may appear on the document and if "the FTC is suggesting that the document be of a certain size." It is our view that Congress intended that the disclosure not be encumbered with extraneous information. However, some additional information, such as a brief description of the nature of the consumer reports covered by the disclosure, may be included if the information does not confuse the consumer or detract from the mandated disclosure.

Doc. No. 12-1. Finally, in "Advisory Opinion to Leathers"[1] in 1998, the FTC staff stated:

The disclosure may not be part of an employment application because the language – ["in a document that consists solely of the disclosure"] – is intended to ensure that it appears conspicuously in a document not encumbered by any other information. The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side with the disclosure. A disclosure that is combined with many items in an employment application – no matter how "prominently" it appears – is not "in a document that consists solely of the disclosure" as required by Section 604(b)(2)(A).

Defendant asserts that the FTC advisory opinions do not constitute authoritative guidance because they do not represent the position of the Commission itself, only the FTC staff. Defendant further argues that the advisory opinions' reasoning with regard to the authorization being placed on the same

---

[1]   This document may be viewed at:   www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98.

document as the disclosure - - i.e., that it will not distract from the disclosure itself - - is not inconsistent with defendant's release form.  Defendant asserts that the alleged extraneous language does not distract "the consumer's attention from the disclosure, but rather focuses the consumer on the disclosure or sharpens her understanding of its implications." Doc. No. 12 at p. 14.

V.  PLAINTIFF'S RESPONSE TO DEFENDANT'S ARGUMENTS

Plaintiff makes the following arguments in response to defendant's motion to dismiss.  First, plaintiff contends that it is premature for the court to determine whether defendant's alleged noncompliance with the FCRA was knowing or reckless. Plaintiff asserts that it is improper to argue lack of willfulness upon a motion to dismiss because it is inconsistent with general pleading standards and inconsistent with the allegations in the complaint.  Plaintiff notes that she has alleged that defendant violated the FCRA's standalone disclosure requirements despite being on notice of those requirements from different sources, such as FTC advisory opinions, district court opinions, and guidance from a background check agency used by defendant.  Plaintiff also claims that the statutory language is unambiguous.  She contends this is sufficient to allege a plausible knowing or reckless violation.

Next, plaintiff contends that, as a matter of law, defendant violated the standalone disclosure provisions of the FCRA in three ways. First, plaintiff asserts that the FCRA prohibits the disclosure from being part of the employment application. Plaintiff contends that defendant violated this allegedly clear statutory prohibition with the Acknowledgement page and the Release form. Second, citing district court cases and the FTC advisory opinions, plaintiff contends that the Acknowledgement page and the Release form violated FCRA's "standalone disclosure" provisions by including release language on the same document as the disclosure language. Third, plaintiff contends that the FCRA's "standalone disclosure" provisions were violated by the inclusion of other extraneous information in the Acknowledgment page and the Release form.

VI.   THE SAFECO DECISION

In Safeco, the plaintiffs alleged that two insurance companies (Safeco and Geico) violated FCRA requirements in § 1681m(a) that notice be given to a consumer subjected to an "adverse action . . . based in whole or in part on any information contained in a consumer [credit] report." (emphasis added). An "adverse action" is defined in FCRA as "a denial or cancellation of, an increase in any charge for, or a reduction or other adverse or unfavorable change in the terms of coverage or amount of, any insurance, existing or applied for." §

12

1681a(k)(1)(B)(i)  (emphasis  added).    Safeco  argued  that  the
notice  provisions  did  not  apply  because  there  was  no  "increase
in  any  charge."    Safeco  argued  that  the  consumers  in  question
were  <u>first-time</u>  customers  whose  initial  rates  were  based  on  a
credit  report  but  not  changed  or  increased  by  credit  report
information.

Safeco's  position  was  in  accord  with  the  Webster's
Dictionary's  definition  of  "increase"  as  a  change  or  an
"'[a]ddition  or  enlargement  in  size,  extent,  quantity,  number,
intensity,  value,  substance,  etc.;  augmentation,  growth,
multiplication.'"    551  U.S.  at  61  (quoting  Webster's  New
International  Dictionary  1260  (2d  ed.  1957)).    The  Supreme  Court
disagreed  that  this  definition  of  the  term  "increase"  was  what
Congress  had  in  mind  in  the  FCRA.    Instead,  the  Court  held  that
an  "increase"  in  price  could  include  situations  in  which  the
insurance  company  had  a  choice  of  what  the  initial  premium  rate
would  be  and  chose  a  higher  rate  on  the  basis  of  information
from  a  credit  report.    <u>Id.</u>  at  61-63.    The  Court  further  held,
however,  that  Safeco's  position,  while  incorrect,  was  not
objectively  unreasonable.

In  making  this  decision  that  Court  found  that  Safeco's
position,  while  erroneous,  "has  a  foundation  in  the  statutory
text"  and  that  Safeco  had  persuaded  the  district  court  to  adopt
it  and  rule  in  Safeco's  favor.    <u>Id.</u>  at  69-70.    The  Court  further

noted that Safeco did not have the benefit of guidance from the courts of appeals or authoritative guidance from the FTC. The Court concluded that "[g]iven this dearth of guidance and the less-than-pellucid statutory text, Safeco's reading was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." Id. at 70.

VII.  IT IS NOT PREMATURE FOR THE COURT TO DECIDE WHETHER PLAINTIFF HAS PLAUSIBLY ALLEGED A WILLFUL VIOLATION OF THE FCRA.

In Safeco, the Court held that a defendant who followed an objectively reasonable reading of the FCRA could not be found to be a knowing or reckless violator of the law and, therefore, a court need not consider evidence of subjective bad faith when an objectively reasonable interpretation was employed. Id. at 70 n.20.  Thus, we find that plaintiff may not avoid the issues raised by defendant in its motion to dismiss merely by arguing that willfulness may be pleaded generally and that often questions of willfulness proceed at least to the summary judgment stage.  Evidence or allegations which might plausibly lead to a willfulness finding will not save the day for a plaintiff, if a defendant's interpretation of the FCRA is objectively reasonable.

Therefore, the court shall examine whether defendant's interpretation of the FCRA may be plausibly alleged to be

objectively reasonable.  But, as discussed below, at least as to one of plaintiff's claims there appears to be a fact issue which cuts short our analysis.

VIII.  PLAINTIFF HAS PLAUSIBLY ALLEGED THAT DEFENDANT DID NOT FOLLOW AN OBJECTIVELY REASONABLE READING OF THE FCRA.

The court shall concentrate upon plaintiff's claims that the Release form violated the provisions of the FCRA.  The court does not reach any question raised in the complaint as to whether the Acknowledgment page complied with the FCRA because defendant does not depend upon that page to argue that it followed the FCRA's disclosure provisions prior to procuring a consumer report regarding plaintiff.

As to the Release form, the court finds that the complaint plausibly alleges a willful violation of the standalone disclosure provisions of the FCRA in at least two ways:  1) the complaint alleges in ¶ 18 that the Release form was included as part of the employment application and thus the disclosure contained in the Release form was not "in a document that consists solely of the disclosure" as required by the FCRA; and 2) the complaint alleges that the Release form contained extraneous information, not "a document that consists solely of the disclosure," even if the Release form was considered a standalone document.  In other words, plaintiff has stated a claim that defendant violated the FCRA requirements for 1) a

standalone document; and 2) a standalone disclosure within the standalone document. The court believes that it is plausible that plaintiff could prove that either of these violations was willful.

   A. Standalone document provisions

   Defendant makes no persuasive argument that the standalone document provisions are unclear or that court decisions or other authorities have found or created an ambiguity. Defendant asserts that "[t]here is no statutory text precluding an employer from making its separate FCRA disclosure document a part of its employment application." Doc. No. 19 at pp. 8-9. But, the court disagrees. The statute requires a disclosure "in a document that consists solely of the disclosure." The court finds that this statutory text requires that the disclosure be in its own document, not part of an employment application. Defendant further contends that the Release form was a standalone document and that it was "logical and appropriate" to present the document "contemporaneously" with the employment application. Doc. No. 19 at p. 9. The circumstances of its presentation, however, appear to be an issue of fact. At this stage of the proceedings, the court is bound by the allegation in ¶ 18 of the Complaint that the Release form was included in the employment application. This allegation states a plausible

claim that defendant recklessly violated the standalone document provisions of the FCRA.

> B.  Standalone disclosure provisions

Plaintiff has stated a plausible claim that the standalone disclosure requirement was recklessly violated by defendant. Defendant asserts that the term "disclosure" is undefined and unclear.  But, the statute requires "a clear and conspicuous disclosure . . . to the consumer . . . that a consumer report may be obtained for employment purposes."  The statute defines the disclosure as a statement that a consumer report may be obtained for employment purposes.

The Release form contains language stating that:  "I hereby release [defendant] and any of its authorized agents from liability, and understand there is no invasion of privacy" and "I understand that submission of false information on this or any employment forms m[a]y result in non-selection or termination if hired."  These statements are arguably quite unrelated to a disclosure that a consumer report may be obtained for employment purposes.  Thus, plaintiff has plausibly alleged that the statements in the Release form recklessly violate the standalone disclosure provisions of the FCRA.[2]

---

[2] Defendant also argues that the term "authorization" is not clearly defined. But, it does not appear and defendant does not argue that the alleged extraneous information on the Release form could reasonably be considered part of an authorization as contemplated in the FCRA.

Defendant contends that its position is objectively reasonable. But, the statutory language is relatively clear in the court's opinion. "Disclosure" is not defined in every possible aspect. But, the phrase "disclosure . . . that a consumer report may be obtained for employment purposes" provides some parameters for what should be contained in a standalone fashion. While there may be some gray area there, it may be plausibly argued that the parameters clearly do not include a release of rights, a declaration that privacy rights are not infringed, or a warning regarding the provision of false information on the Release form and any other employment forms. Thus, it may be plausibly asserted that the standalone disclosure provision was recklessly violated by the use of the Release form because it did not consist solely of the disclosure that a consumer report may be obtained for employment purposes.

The Safeco case is distinguishable in our opinion because this is not a situation where a defendant's construction of a statutory term has a foundation in the statutory text or is supported by a common dictionary definition of a critical term. Also, the court is not persuaded by defendant's assertion that the meaning of "solely" is put into question by the statutory provision permitting an authorization on the standalone disclosure document. Congress is obviously entitled to make an express exception within a statutory rule. Moreover, the court

may construe from Congress's failure to make other exceptions that such other exceptions were not intended.  Singleton v. Domino's Pizza, LLC, 2012 WL 245965 *8 (D.Md. 1/25/2012); see also, Milbourne v. JRK Residential America, LLC, 2015 WL 1120284 *7 (E.D.Va. 3/11/2015)(Congress did not alter plain meaning of "solely" by allowing authorization to appear on the disclosure document).  The exception is clearly limited and does not appear to add ambiguity to the mandate that, other than the authorization, the document shall consist "solely of the disclosure."[3]

The absence of appellate court authority on this question does not persuade the court that defendant's position is objectively reasonable.  It is a factor for consideration, but not a dispositive factor.  As other courts have recognized, the absence of contrary authority may merely establish that the issue has not been presented to a court of appeals before. Fuges v. Southwest Financial Services, Ltd., 707 F.3d 241, 253 n.21 (3rd Cir. 2012); Cortez v. Trans Union, LLC, 617 F.3d 688, 722 (3rd Cir. 2010); Boyd v. CEVA Freight, LLC, 2013 WL 6207418 *7 (E.D.Va. 11/27/2013).  It is important to remember, despite

---

[3]  In other contexts, courts have construed the term "solely" to mean "exclusively."  See Thomas v. Metropolitan Life Ins. Co., 631 F.3d 1153, 1162 (10th Cir. 2011).  See also, F.C.C. v. NextWave Personal Communications Inc., 537 U.S. 293, 301-02 (2003)("solely because" means one cause "alone" triggered a decision); Helvering v. Southwest Consolidated Corp., 315 U.S. 194, 198 (1942)("'Solely' leaves no leeway").  As discussed in Singleton, 2012 WL 245965 at *8, this is consistent with dictionary definitions of the term.

comparisons made to qualified immunity analysis, that this is not a question of whether a legal principle is clearly established in constitutional jurisprudence where existing circuit court or Supreme Court precedent is usually required. E.g., Tonkovich v. Kansas Board of Regents, 159 F.3d 504, 516 (10th Cir. 1998). Instead, it is an issue of statutory interpretation where there is a greater potential for the relevant text to provide clear guidance. Here, the statutory text indicates that defendant's position is not objectively reasonable.

We consider the split among district courts of greater significance since the Court in Safeco noted as part of its analysis that the insurance company's argument was sufficiently convincing to have persuaded the district court to adopt it. But, we firmly feel that the district court opinions supporting plaintiff's construction of the statute are substantially more convincing and that the statutory text is relatively clear. See Milbourne, 2015 WL 1120284 at *6-7; Reardon, 2013 WL 6231606 at *8-11; Singleton, 2012 WL 245965 at *10. Moreover, the district court cases defendant cites in its favor are distinguishable. Two of the cases involve forms in which waiver or release language was included in the disclosure. See Syed v. M-I LLC, 2014 WL 4344746 (E.D.Cal. 8/28/2014); Smith v. Waverly Partners, LLC, 2012 WL 3645324 (W.D.N.C. 8/23/2012). The Release form in

this case includes release language <u>plus</u> other arguably extraneous information.  Thus, the <u>Syed</u> and <u>Smith</u> cases do not find that the disclosure in the Release form follows a reasonable reading of the FCRA.[4]

Finally, defendant asserts that the advisory opinions issued by the FTC staff are not authoritative.  We agree.  But, they have some persuasive value in support of the plausibility of plaintiff's claims.  See <u>Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial Services, Inc.</u>, 537 F.3d 1184, 1192 (10th Cir. 2008)(FTC staff opinion letter may be considered for persuasive value in a FCRA action).

IX.  CONCLUSION

For the above-stated reasons, the court finds that plaintiff has alleged plausible claims that defendant willfully violated the FCRA.  Therefore, the court shall deny defendant's motion to dismiss.

**IT IS SO ORDERED.**

Dated this 5th day of May, 2015, at Topeka, Kansas.


s/ RICHARD D. ROGERS
Richard D. Rogers
United States District Judge

---

[4] A third case cited by defendant, <u>Burghy v. Dayton Racquet Club, Inc.</u>, 695 F.Supp.2d 689 (S.D.Ohio 2010), also does not appear to concern a disclosure form which is comparable to the one plaintiff alleges in this case.  The form described in the recent case, <u>Goldberg v. Uber Technologies, Inc.</u>, 2015 WL 1530875 (D.Mass. 4/6/2015), also appears to be substantially different.

21