## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| EMERALD LENGEL, | ) | |
| on behalf of herself and all those | ) | |
| similarly situated, | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 15-2198-KHV** |
| | ) | |
| HOMEADVISOR, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Emerald Lengel brings this putative class action on behalf of all persons who applied for employment with defendant HomeAdvisor, Inc., between January 13, 2013 and June 10, 2015. Plaintiffs claim that HomeAdvisor violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b)(2)(A)(i).  Specifically, plaintiffs allege that HomeAdvisor failed to provide job applicants a stand-alone disclosure stating that it would obtain a consumer report (background check) for employment purposes.  Plaintiffs also allege that these violations were willful, and thus triggered statutory penalties under 15 U.S.C. § 1681n(a)(1)(A).

This matter comes before the Court on plaintiffs' unopposed Motion For Preliminary Approval Of Class Action Settlement (Doc. #49) filed November 18, 2015.  Plaintiffs seek (1) preliminary certification of the proposed settlement class, (2) preliminary settlement approval, (3) appointment of Lengel as representative of the settlement class, (4) appointment of Lengel's attorneys as class counsel and (5) approval of the proposed class notice.  For reasons set forth below, the Court sustains plaintiffs' motion in part.

## **Factual And Procedural Background**

Plaintiffs allege the following facts:

On November 25, 2013, Lengel submitted a job application to HomeAdvisor.[1]  The five-page application contained two disclosures which plaintiffs allege violated the FCRA.  The first three pages of the application seek "basic information" such as name, address, position applied for, education, prior work history, references and prior convictions.  Doc. #1-2.  The fourth page includes a section labeled "Acknowledgment and Signature" which states that the applicant has no agreement with a prior employer which would restrict or impair employment with HomeAdvisor; that the employment relationship with HomeAdvisor would be as an at-will employee; that the applicant understood that policy statements or handbooks or other materials did not constitute a guarantee of employment; that HomeAdvisor had the right to modify, amend or terminate its policies, practices, programs and benefit plans; and that the applicant understood that HomeAdvisor would rely upon the accuracy and completeness of the applicant 's statements.  Finally, the acknowledgment section states as follows:

> I authorize investigation of all statements contained in this application and permit HomeAdvisor to obtain any transcripts, records or documents pertaining to my background and business experience. I also agree to release HomeAdvisor from any liability arising therefrom and understand that any misstatements, omissions or false statements made by me may be cause for dismissal.

Doc. #1-2 ¶ 18.  Lengel signed and dated the fourth page.[2]

---

[1]      HomeAdvisor hired Lengel on the day that she completed the job application, contingent on a satisfactory background check.  On December 2, 2013, Lengel began working for HomeAdvisor.

[2]      In ruling on HomeAdvisor's motion to dismiss, the Court noted that first four pages of the exhibit have a bold line border. The fifth page does not, suggesting that it is a different

(continued...)

The fifth page is the "Background Check Authorization: Applicant Information Release Form," which states as follows:

> I hereby authorize HomeAdvisor and/or [its] authorized agents to gather information regarding the following: All records including criminal, credit, driving, drug, and/or education; written or verbal from previous employers; and any other pertinent information relating to the function of my job.
>
> I understand that all inquiries on this form are used for identification purposes only in order to conduct a background check, and are asked for legitimate nondiscriminatory reasons. Responses to sex, age and race inquir[i]es are voluntary, and choosing not to respond will not preclude hire. I hereby release HomeAdvisor and any of its authorized agents from liability, and understand there is no invasion of privacy. I understand that submission of false information on this or any employment forms m[a]y result in nonselection or termination if hired. The following is my complete legal name, and all information is true and correct to the best of my knowledge. This information is used for verification purposes ONLY:

Doc. #1-2. Below these paragraphs are blank fields for the applicant's name, the position applied for, race, sex and current and previous address. This information duplicates some of the information on the first three pages. The fifth page also contains a signature line.

On January 13, 2015, Lengel filed this lawsuit alleging that the HomeAdvisor application violated the FCRA requirement that an employer disclose a request to procure a consumer report in a document that consists solely of the disclosure.

On February 24, 2015, HomeAdvisor filed a motion to dismiss the complaint for failure to state a claim, arguing that the background check disclosure complied with the FCRA and that Lengel did not adequately allege a willful violation of the FCRA. See Doc. #12. The Court overruled the motion to dismiss, finding that Lengel alleged a plausible claim under the FCRA. See Memorandum

---

[2](...continued)
document than the first four pages.

And Order (Doc. #20.

The parties have engaged in extensive discovery.  On September 16, 2015, the parties participated in a full-day mediation with Honorable Wayne Anderson, Retired, of JAMS.  See Richter Decl. ¶ 9.  On September 23, 2015, the parties reached an agreement in principle and over the next few weeks they executed a Settlement Agreement.  See Settlement Agreement And Release (Doc. #53-1) filed November 18, 2015.

> The Settlement Agreement contemplates a nationwide settlement class defined as follows:
>
> All applicants for employment with HomeAdvisor about whom HomeAdvisor procured a consumer report for employment purposes at any time from January 13, 2013 through June 10, 2015, excluding any individuals who timely file a valid written notice of intent to opt out of the Settlement.

Id. at ¶ 25.[3]  The settlement class includes approximately 1,650 persons.  Garcia-Lewis Decl. ¶ 4.

Under the settlement agreement, HomeAdvisor will establish a $190,000 settlement fund to compensate settlement class members and pay any amounts which the Court approves for attorneys' fees, expenses and a class representative service award.  Doc. #53-1 at ¶ 29. The settlement agreement provides that in addition to the $190,000 fund, HomeAdvisor will pay all administrative costs of settlement, including the cost of disseminating notice and distributing settlement payments.  Id. at ¶ 36.

The settlement agreement does not require class members to fill out a claim form to receive compensation.  Rather, if the Court approves the settlement, HomeAdvisor will automatically send checks to settlement class members by first-class mail.  Id. at ¶ 31.  HomeAdvisor will use the address which it has on file for each class member, updated for former employees by

---

[3]      The class period ends June 10, 2015 because HomeAdvisor changed its background check disclosure after that date.  See Garcia-Lewis Decl. ¶ 3.

cross-referencing the National Change of Address Database.  Id.[4]

In exchange for this monetary payment, class members will release all claims "arising out of or relating to the facts alleged in the complaint including but not limited to any and all claims under the FCRA, including specifically 15 U.S.C. § 1681b(b)(2)(A), and any parallel or similar state or common-law claims."  Id. at ¶ 38.[5]

HomeAdvisor will send notice of the settlement by first-class mail.  Id. at ¶ 39.  Class members will have 60 days from the mailing date to object or opt out of the settlement.  Id. at ¶ 13. HomeAdvisor will re-send any class notice that is returned to the settlement administrator with a forwarding address.  Id. at ¶ 40.  If no forwarding address is provided, HomeAdvisor will make reasonable efforts to obtain a valid address by calling the last known phone number, emailing the last known email address and searching online for an address.  Id.

The proposed notice of settlement includes, among other things: (1) a summary of the lawsuit; (2) the definition of the settlement class; (3) a description of the material terms of the settlement; (4) a disclosure of the release of claims; (5) an explanation of settlement class members' opt-out rights, the date by which class members must opt out and information regarding how to opt out; (6) instructions how to object to the settlement and the due date for objections; (7) the date, time

---

[4]     If the U.S. Postal Service returns any settlement payment with a forwarding address before the check expires, HomeAdvisor will promptly re-mail the check to the forwarding address. Settlement Agreement, Doc. #53-1 at ¶ 31.  If the settlement payment is returned without a forwarding address, HomeAdvisor will make reasonable efforts to obtain a current address for the pertinent settlement class member by calling the last known phone number, emailing the last known email address, and, if necessary, searching online for an address.  Id.

[5]     This release will apply to HomeAdvisor and its affiliates, parent companies, subsidiaries, predecessors, successors, corporate family members, officers, directors, partners, employees, attorneys, agents, shareholders, representatives, trustees, principals, and assigns. Doc. #53-1 at ¶ 24.

and location of the final approval hearing; (8) how to obtain further information regarding the settlement; (9) contact information for class counsel; and (10) information regarding the amount that class counsel may seek in attorneys' fees ($63,333) plus expenses, as well as the proposed class representative service award (up to $1,000). Proposed Notice Of Settlement (Doc. # 53-2) filed November 18, 2015.

### Analysis

Plaintiffs seek (1) preliminary certification of the proposed settlement class, (2) preliminary settlement approval, (3) appointment of Lengel as representative of the settlement class, (4) appointment of Lengel's attorneys as class counsel and (5) approval of the proposed class notice. HomeAdvisor does not oppose the motion.

### I.      Preliminary Settlement Class Certification

A.      Class Certification Standards

The class action is an exception to the usual rule that litigation is only conducted by and on behalf of individual named parties. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011). Whether to certify a class is left to the broad discretion of the trial court. See Shook v. El Paso Cty., 386 F.3d 963, 967 (10th Cir. 2004). The Court must conduct a rigorous analysis to determine whether the parties seeking certification have shown that the putative class satisfies the prerequisites of Rule 23. Dukes, 131 S. Ct. at 2551. While Rule 23 does not give the Court license to conduct free-ranging merits inquiries at the certification stage, the Court may consider the merits of a suit "to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites are satisfied." Amgen v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1194-95 (2013).

As the party seeking class certification, plaintiffs have the burden to prove that the requirements of Rule 23 are met. D. Kan. Rule 23.1(d); Shook, 386 F.3d at 968; see Dukes, 133 S. Ct. at 2553 (citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 159 (1982)). Under a strict burden of proof, plaintiffs must affirmatively demonstrate that the requirements of Rule 23 are clearly satisfied. Dukes, 131 S. Ct. at 2551; Trevizo v. Adams, 455 F.3d 1155, 1162 (10th Cir. 2006). Plaintiffs must first satisfy the prerequisites of Rule 23(a), that is, they must demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) the claims of the representative parties are typical of the claims of the class and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. R. 23(a). After meeting these requirements, plaintiffs must demonstrate that the proposed class action fits within one of the categories described in Rule 23(b), Fed. R. Civ. P.

Plaintiffs seek to proceed under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C)    the desirability or undesirability of concentrating the litigation of claims in the particular forum; and
> (D)    the likely difficulties in managing the action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). In deciding whether to certify a settlement class, the Court need not inquire whether the case, if tried, would present difficult management problems under

Rule 23(b)(3)(D).  See Amchem Prods. v. Windsor, 521 U.S. 591, 620 (1997).  All of the other requirements apply, however, and demand heightened attention in the settlement context. Id. Such attention is vital because in the settlement context, the Court generally lacks an opportunity to adjust the class as it becomes informed by the proceedings as they unfold.  See id.

      B.     Rule 23(a) Requirements

As noted, plaintiffs seek conditional certification of the following settlement class:

> All applicants for employment with HomeAdvisor about whom HomeAdvisor procured a consumer report for employment purposes at any time from January 13, 2013 through June 10, 2015, excluding any individuals who timely file a valid written notice of intent to opt out of the Settlement.

Settlement Agreement And Release (Doc. #53-1) filed November 18, 2015, at ¶25.  HomeAdvisor's records indicate that the settlement class includes approximately 1,650 individuals.

      1.     Numerosity

Rule 23(a)(1) requires plaintiffs to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); see Trevizo, 455 F.3d at 1162 (plaintiffs must produce evidence to meet numerosity requirement).  As noted, plaintiffs represent that the settlement class includes 1,650 members.  Although there is no strict numerical test, the "per se numerosity threshold seems to exist somewhere south of 150 proposed class members." Anderson Living Tr. v. WPX Energy Prod., LLC, 306 F.R.D. 312, 379, 436 (D.N.M. 2014) (citing Mullen v. Treasure Chest Casino, LCC, 186 F.3d 620, 624 (5th Cir. 1999) (class of 100 to 150 members within range that generally satisfies numerosity requirement)).  The Court finds that plaintiffs satisfy the numerosity requirement.

2.      Commonality

Rule 23(a)(2) requires plaintiffs to show that "questions of law or fact are common to the class."   Fed. R. Civ. P. 23(a)(2).   Merely raising common questions, however, does not automatically satisfy the commonality requirement.  See Dukes, 131 S. Ct. at 2551.  Plaintiffs must demonstrate that they have suffered the same injury, and their claims must rely on a common contention that is capable of classwide resolution.  Id.  A question is "common" if its truth or falsity will resolve an issue that is central to the validity of every claim in one stroke.  Id.  To satisfy Rule 23(a)(2), a single common question will do.  Id.  The commonality requirement of Rule 23(a) is satisfied "when the legal question linking the class members is substantially related to the resolution of the litigation."  DeBoer v. Mellon Mortg. Co., 64 F.3d 1171, 1174 (8th Cir. 1995)).

Here, common questions are clear.  Plaintiffs allege numerous common issues of law and fact, including (1) whether HomeAdvisor's background check disclosure was part of the employment application or a "stand-alone" document; (2) whether HomeAdvisor's background check disclosure violated the FCRA because it contained extraneous information and if so, (3) whether HomeAdvisor "willfully" violated the FCRA.  Every member of the settlement class received the same background check disclosure.  A class action will therefore generate common answers to questions that are central to every claim.

3.      Typicality And Adequacy Of Representation

The typicality and adequacy of representation requirements of Rule 23(a) tend to merge, "although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest."  Dukes, 131 S.Ct. at 2551 n.5 (citing Falcon, 457 U.S. at 157-58).  Rule 23(a)(3) requires plaintiffs to show that "the claims of the representative parties are typical of

the claims of the class." Fed. R. Civ. P. 23(a)(3). This element requires that a representative plaintiff possess the same interests and suffer the same injuries as the proposed class members. Falcon, 457 U.S. at 156. The claims of the representative plaintiff need not be identical, however, to those of the other class members. DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1198 (10th Cir. 2010). As long as the claims of named plaintiff and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality. Id.

Rule 23(a)(4) requires plaintiffs to show that "the representative part[y] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, the representative plaintiff must show that (1) her interests do not conflict with the interests of other class members and (2) she will prosecute the action vigorously through qualified counsel. See E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977); Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002); Harlow v. Sprint Nextel Corp., 254 F.R.D. 418, 425 (D. Kan. 2008). To defeat class certification a conflict must be "fundamental" and speak to specific issues in controversy. Minor conflicts are not enough. Eatinger v. BP Am. Prod. Co., No. 07-1266-EMF, 2010 WL 3023957, at *4 (D. Kan. Aug. 2, 2010).

Lengel asserts that plaintiffs satisfy the typicality requirement because her claims and the claims of other class members arise out of the same alleged course of conduct, are based on the same legal theories and require the same evidence to prove. Lengel contends that she will adequately represent absent class members because she has no interests which are antagonistic to the class and has demonstrated her allegiance to this litigation through her participation in the settlement process on behalf of all putative class members. See Amchem, 521 U.S. at 625; Carpe v. Aquila, Inc., 224 F.R.D. 454, 458 (W.D. Mo. 2004)). Based on these representations, the Court

10

finds that Lengel is an adequate representative of the settlement class. Moreover, Lengel's counsel, Kai H. Richter of Nichols Kaster, LLP and Michael F. Brady and Mark Kistler of Brady & Associates have extensive experience litigating class action cases, including disclosure cases under the FCRA, and are clearly adequate to represent the settlement class in this case. See Richter Decl. ¶¶ 16-20; see Rutter, 314 F.3d at 1187-88.

C.      Rule 23(b) Requirements

In addition to satisfying Rule 23(a), parties seeking class certification must meet the requirements of Rule 23(b)(1), (2), or (3). Amchem 521 U.S. at 623. Plaintiffs ask the Court to certify a settlement class under Rule 23(b)(3). Under that provision, plaintiffs must show that "questions of law or fact common to members of the class predominate over any questions affecting individual members" and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. Amchem, 521 U.S. at 623. The superiority requirement insures that no other available method of handling the claims has greater practical advantages. See In re Universal Serv. Fund Tele. Billing Practices Litig., 219 F.R.D. 661, 679 (D. Kan. 2004). In determining predominance and superiority under Rule 23(b)(3), the Court considers the following factors:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C)    the desirability or undesirability of concentrating the litigation of claims in the particular forum; and
(D)    the likely difficulties in managing the action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

11

1.      <u>Predominance</u>

The predominance prong "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the noncommon, aggregation-defeating, individual issues." <u>CGC Holding Co., LLC v. Broad & Cassel</u>, 773 F.3d 1076, 1087 (10th Cir. 2014).  Here, the predominant issue is whether HomeAdvisor's background check disclosure form complied with the FCRA.  Because every settlement class member received the same disclosure form, this issue is susceptible to class-wide resolution.  Further, the question whether HomeAdvisor willfully violated the FCRA is the same for each settlement class member.  Finally, as to damages, there are no individualized issues because the statutory damages available to each settlement class member are the same.  The Court finds that common questions predominate over individual questions.

2.      <u>Superiority</u>

Plaintiffs state that a class action is superior to other available methods because class members would have little incentive to proceed with individual cases, each of which concerns a relatively small amount of money compared to costs and uncertainty of litigation.  The Court agrees that a class action would be superior to individual actions.   Accordingly, the Court will conditionally certify the proposed settlement class subject to plaintiffs demonstrating at the final approval hearing  – "under a strict burden of proof"—that the requirements of Rule 23(a) and (b)(3) are clearly satisfied.

**II.      Preliminary Approval Of Proposed Settlement**

Under Rule 23(e), Fed. R. Civ. P., once a class is certified, the action may not be settled, dismissed or compromised without Court approval.  Preliminary approval of a proposed settlement is the first of two steps required before a class action may be settled.  <u>In re Motor Fuel Temp. Sales</u>

Practices Litig., 258 F.R.D. 671, 675 (D. Kan. 2009).  If the Court grants preliminary approval, it directs notice to class members and sets a hearing to determine the fairness of the class settlement. Id.

At the preliminary approval stage, the Court makes a preliminary evaluation of the fairness of the proposed settlement and determines whether the proposed settlement is within the range of possible approval, i.e. whether there is any reason not to notify class members of the proposed settlement and proceed with a fairness hearing.  See Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982); Freebird, Inc. v. Merit Energy Co., No. 10-1154-KHV, 2012 WL 6085135 (D. Kan. Dec. 6, 2012); In re Motor Fuel Temp. Sales Practices Litig., 258 F.R.D. at 675-76.  The Court will ordinarily grant preliminary approval where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; has no obvious deficiencies; does not improperly grant preferential treatment to class representatives or segments of the class; and falls within the range of possible approval.  The standards for preliminary approval of a class settlement are not as stringent as the requirements for final approval.  Freebird, 2012 WL 6085135, at *5.  The Court is mindful, however, that a higher degree of scrutiny applies when determining the fairness of a settlement negotiated before class certification.  In re Motor Fuel Temp. Sales Practices Litig., 258 F.R.D. at 676.

In deciding whether to approve a proposed settlement, the Court assesses the reasonableness of the compromise, taking into account the context in which the parties reached the settlement.  See id. (citing Nat'l Treasury Emp. Union v. United States, 54 Fed. Cl. 791, 797 (2002)).  Although the Court must assess the strength of plaintiffs' claims, it should "not decide the merits of the case or resolve unsettled legal questions."  Id. (citing Carson v. Am. Brands, Inc., 450 U.S. 79, 88 n.14

(1981)).

Plaintiffs ask the Court to preliminarily approve the proposed settlement.  In determining whether a proposed settlement is fair, reasonable and adequate, the Court considers the following factors:

(1)    whether the proposed settlement was fairly and honestly negotiated;
(2)    whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
(3)    whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
(4)    the judgment of the parties that the settlement is fair and reasonable.

Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002).  While the Court will consider these factors in greater depth at the final approval hearing, they are a useful guide at the preliminary approval stage as well.  See In re Motor Fuel Temp. Sales Practices Litig., 258 F.R.D. at 675; Lucas v. Kmart Corp., 234 F.R.D. 688, 693 (D. Colo. 2006); Am. Med. Ass'n v. United Healthcare Corp., No. 00-2800(LMM), 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009).

Here, the first, second and fourth factors weigh in favor of preliminary approval.  As to the first factor, it appears the parties negotiated the settlement fairly and honestly.  The parties are represented by counsel with experience in class action litigation.  They engaged in extensive arms-length negotiations which produced this proposed settlement.

As to the second factor, questions of law and fact remain.  Specifically, although plaintiffs successfully defeated a motion to dismiss the lawsuit, HomeAdvisor has asserted several defenses to liability.  For example, because the FCRA is not a strict liability statute, plaintiffs can recover statutory damages of $100 to $1000 only where defendant has acted willfully.  See 15 U.S.C. § 1681n(a)(1).  In denying HomeAdvisor's motion to dismiss, the Court did not decide the issue of willfulness.  Instead, the Court stated that it was "plausible" that plaintiffs could prove that the

14

violations were willful.  Memorandum And Order (Doc. #20) at 16.  Thus, the Court left open the possibility that at summary judgment or at trial, HomeAdvisor could establish that any FCRA violations were merely negligent and not willful – in which case plaintiffs would recover nothing. Moreover, although plaintiffs believe that HomeAdvisor's interpretation of the FCRA is objectively unreasonable, some courts have read the statute to allow inclusion of extraneous information in addition to the authorization and disclosure.  See Schoebel v. Am. Integrity Ins. Co. of Fla., No. 8:15-cv-380-T-24 AEP, 2015 WL 3407895 (M.D. Fla. May 27, 2015) (finding technical violation of FCRA but dismissing claims for willful violation because release language consistent with spirit of FCRA and not objectively unreasonable).  Further, in denying HomeAdvisor's motion to dismiss, the Court expressed doubt whether the background check authorization was part of the employment application or its own separate disclosure.  See Doc. #20 at 16.

As to the fourth factor, Lengel and her counsel have signed the settlement agreement, indicating that they think the agreement is fair and reasonable.  Lengel and her counsel have submitted declarations in support of the proposed settlement.  See Richter Decl.; Lengel Decl.  The Court should "hesitate to substitute its own judgment for that of counsel."  Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 691 (N.D. Ga. 2001) (quoting Warren v. City of Tampa, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988)); see also In re BankAm. Corp. Secs. Litig., 210 F.R.D. 694, 702 (E.D. Mo. 2002).

Regarding the third factor, the Court weighs the value of immediate recovery under the settlement against the possibility of future recovery after further proceedings and a trial.  Plaintiffs assert that the settlement provides class members with substantial monetary benefits.  See Vigil v. Finesod, 779 F. Supp. 522, 526 (D.N.M. 1990) (if proposed settlement not approved, result will be

"a much more complicated and expensive course of litigation and there is no assurance that the final result will in any way be superior"). Specifically, the settlement agreement provides that HomeAdvisor will establish a $190,000 settlement fund to compensate class members and to pay any amounts which the Court approves for attorneys' fees, expenses and a class representative service award. <u>Settlement Agreement</u> (Doc. #53-1) at ¶ 29. HomeAdvisor will pay all administrative costs of settlement, including the cost of notice and distributing settlement payments. <u>Id.</u> ¶ 36.[6]

Plaintiffs point out that on a gross basis, the settlement amount represents a recovery of over $100 per class member ($190,000 / 1,650 = $115.15), which exceeds the minimum statutory penalty for willful violations under 15 U.S.C. § 1681n(a)(1)(A). On a net basis, each settlement class member will receive at least $50, see <u>Settlement</u>, Doc. #53-1, ¶ 30.[7] A $100 gross recovery and net recovery of at least $50 per class member is notably higher than other FCRA disclosure settlements that courts have approved. See, e.g., <u>Memorandum Of Points And Authorities In Support Of Final Approval Of Class Action Settlement</u> (Doc. #60) at 1, filed September 9, 2015 in <u>Kirchner v. Shred-It USA Inc.</u>, No. 2:14-cv-01437 (E.D. Cal.) (seeking final approval where class would receive $44 gross recovery per class member) and <u>Final Order And Judgment</u> (Doc. #63) filed October 22, 2015 in <u>Kirchner</u>, No. 2:14-cv-01437 (E.D. Cal.) (approving settlement); <u>Memorandum Of Law In Support Of Joint Motion For Final Approval Of Class Action Settlement</u> (Doc. #58-1) at 6, filed

---

[6] Because HomeAdvisor has agreed to pay these expenses, they will not be deducted from the payments provided to class members under the settlement.

[7] The actual amount is likely to be greater because plaintiffs' counsel do not intend to seek more than one-third of the settlement fund in fees. Richter Decl.,¶ 6.5.

June 22, 2105 in <u>Rawlings v. The Scotts Co.</u>, No. 3:14-cv-319 (W.D. Mo) (seeking final approval where class members would receive approximately $40 before deductions for fees and costs) and <u>Final Approval Order</u>, Doc. #61 (W.D. Mo. July 2, 2015) (approving settlement); <u>Plaintiff's Memorandum In Support Of Joint Motion For Preliminary Approval Of Class Action Settlement</u> (Doc. #24) filed August 11, 2014 in <u>Simons v. Aegis Commnc's Grp., LLC</u>, No. 2:14-cv-4012 (W.D. Mo.) (seeking approval for settlement where class members would receive $33 before deductions) and <u>Final Order And Judgment</u> (Doc. #32) filed January 15, 2015 in <u>Simons,</u> No. 2:14-cv-4012 (W.D. Mo.) (approving settlement). Plaintiffs also point out that in contrast to many other class settlements, HomeAdvisor will pay class members without requiring a claim form. Moreover, the settlement will save time and costs and avoid the risks associated with further litigation.

Although most of the other terms of the settlement appear fair and reasonable, the settlement is unclear on one point regarding the scope of the release and on two points related to payment to class members.

The settlement provides that in exchange for a monetary payment, class members will release all claims "arising out of or relating to the facts alleged in the complaint including but not limited to any and all claims under the FCRA, including specifically 15 U.S.C. § 1681b(b)(2)(A), and any parallel or similar state or common-law claims." <u>Id.</u> at ¶ 38. The broad release of claims relating to the facts alleged in the complaint and not limited to claims under the FCRA potentially covers a range of employment claims far broader than the FCRA claims in the complaint. See <u>In re Adelphia Commcn's Corp. Sec. & Derivative Litig.</u>, 272 Fed.Appx. 9, 13 (2d Cir. 2008) (although broad class action settlements common, released claims must be limited to claims arising out of

factual predicate of lawsuit). Here, the settlement amount appears reasonable only if plaintiffs release any FCRA claims but not all employment-related claims. See In re Literary Works in Elec. Databases Copyright Litig., 654 F.3d 242, 247-48 (2d Cir. 2011) (citing TBK Partners, Ltd. v. W. Union Corp., 675 F.2d 456, 460 (2d Cir. 1982)).

The Court also notes two issues in regard to provisions for payments to class members. First, the agreement provides that HomeAdvisor will mail each settlement class member a check for the pro-rata share of the net settlement fund. Presumably defendant will not mail checks to settlement class members for whom it has no good address, but the settlement agreement does not spell out what happens to those class members' share of the net settlement fund.[8] Second, the settlement agreement does not contain a provision for re-distributing to class members the funds from checks which are not cashed within 60 days. As this Court has noted,

> where settlement involves individual distributions to class members and funds remain after distributions because some class members could not be reached, the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair.

Better v. YRC Worldwide, Inc., 2013 WL 6060952, at *6 (D. Kan. Nov. 18, 2013) (quoting Am. Law Inst., Principles of the Law of Aggregate Litigation § 3.07 (2010)).

On this record, the third factor, i.e. whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, does not favor preliminary approval of the settlement. Accordingly, the Court cannot preliminarily approve the

---

[8]     As a practical matter, defendant will not know the number of settlement class members for whom it has correct addresses until the notice procedure is complete. The parties have not provided information about how many class members are likely to be unreachable based on age, the passage of time, etc.

settlement agreement as fair, reasonable and adequate.

III.    **Notice**

Because the Court has not approved the settlement agreement, it does not address plaintiffs' proposed class notice.

**IT IS THEREFORE ORDERED** that plaintiffs' unopposed <u>Motion For Preliminary Approval Of Class Action Settlement</u> (Doc. #49) filed November 18, 2015 be and hereby is **SUSTAINED in part**.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 23(c), the Court preliminarily certifies the following settlement class:

> All applicants for employment with HomeAdvisor about whom HomeAdvisor procured a consumer report for employment purposes at any time from January 13, 2013 through June 10, 2015, excluding any individuals who timely file a valid written notice of intent to opt out of the Settlement.

**IT IS FURTHER ORDERED** that the Court appoints Emerald Lengel as class representative for the settlement class.  The Court appoints Kai H. Richter of Nichols Kaster, PLLP and Michael F. Brady and Mark Kistler of Brady & Associates as class counsel for the settlement class.

**IT IS FURTHER ORDERED** that **on or before February 6, 2017**, plaintiffs may file a motion for preliminary approval of a revised settlement and for approval of a revised proposed class notice.

Dated this 25th day of January, 2017 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge

19